UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

PAMELA LEE NORTHEDGE,

        Debtor.

_____/

Case No. DG 12-07688
Hon. Scott W. Dales
Chapter 13

PAMELA L. NORTHEDGE,

        Plaintiff,

v.

TODD BECKETT,

        Defendant.

_____/

Adversary Pro. No. 13-80089

OPINION AND ORDER REGARDING MOTION FOR SUMMARY JUDGMENT

PRESENT:   HONORABLE SCOTT W. DALES
                   United States Bankruptcy Judge

## I.  INTRODUCTION

Pamela Lee Northedge (the "Debtor") and Todd Beckett, though divorced in 2004, continue to spar over the division of their former marital home in Greenville, Michigan (the "Property"), nine years and three bankruptcy cases later.  The Debtor now has three creditors:  a car lender, the home lender, and Mr. Beckett.  To resolve Mr. Beckett's summary judgment motion, the parties ask the court to decide whether to recognize a lien in Mr. Beckett's favor under the parties' divorce decree or declare that the Debtor holds the Property free of his lien, either because it did not attach, was not perfected, or was extinguished.  For the following reasons, the court will grant Mr. Beckett's motion for summary judgment.

## II.  JURISDICTION AND STANDING

The court has jurisdiction over the Debtor's bankruptcy case pursuant to the grant of that power to the United States District Court under 28 U.S.C. § 1334(a).  The District Court has referred the case and this adversary proceeding to the United States Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and LCivR 83.2(a) (W.D. Mich.).  The adversary proceeding is a "core proceeding" under 28 U.S.C. § 157(b)(2)(K) because the Property is included within the Debtor's bankruptcy estate.  The exercise of a bankruptcy court's *in rem* jurisdiction was not at issue in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), so the court does not regard that decision as undermining its authority to enter final judgment in this case.

A litigant's standing is a matter affecting a federal court's jurisdiction, *see, e.g., Whitmore v. Arkansas*, 495 U.S. 149 (1990), and the Debtor's standing to assert chapter 5 avoidance powers is not beyond question.  Consequently, the court has an independent obligation to satisfy itself that it has jurisdiction.

Despite conflicting case law concerning a chapter 13 debtor's standing to employ trustee avoidance powers, many courts in the Sixth Circuit have held that a chapter 13 debtor does not possess independent standing to exercise chapter 5 avoidance powers outside of § 522(h).  *See, e.g., In re Osting*, 337 B.R. 297, 306 (Bankr. N.D. Ohio 2005) ("debtor lacks authority to directly exercise the trustee's avoiding powers under §§ 547 and 548"); *In re Lott*, 196 B.R. 768, 776-77 (Bankr. W.D. Mich. 1996) ("a chapter 13 debtor does not having standing to exercise the trustee's avoidance powers"); *In re Holdway*, 83 B.R. 510, 513 (Bankr. E.D. Tenn. 1988) ("a Chapter 7 debtor could, pursuant to § 547(b), recover wages earned and withheld within the ninety-day period prior to bankruptcy, and where trustee did not do so, debtor could avoid transfer under § 522(h)").  Recent Sixth Circuit Bankruptcy Appellate Panel decisions, however,

have departed from the majority's rationale, electing, instead, to extend derivative standing to chapter 13 debtors exercising avoidance powers on behalf of a bankruptcy estate where the trustee has refused to do so, independent of exemption rights. *See,* e.g., *U.S. Bank Nat'l Assoc. v. Barbee (In re Barbee)*, 461 B.R. 711, 715 (B.A.P. 6th Cir. 2011) (debtor has "derivative standing to avoid the Bank's lien pursuant to § 544"). To the extent the Debtor asserts § 544 in connection with her rights under § 522(h), the court finds she has standing because the latter section clearly authorizes a debtor to assert avoidance powers to maximize exemption rights. To the extent the Debtor asserts § 544 without regard to her exemption rights, as a trustee might in a typical strong arm proceeding, the standing is at least colorable under the Bankruptcy Appellate Panel's decision in *Barbee*. To the extent that the Debtor seeks declaratory relief in the nature of a state law action to clear title to the Property without resorting to § 544, the Debtor, too, has standing by virtue of the interplay between §§ 363(b), 1303, and 1306(b). The Bankruptcy Code permits chapter 13 debtors to remain in possession of, to use, property of the estate. *See* 11 U.S.C. § 1303 and 1306(b). This authority includes whatever rights the Debtor had against Mr. Beckett under the prepetition decisions of the State Court or otherwise with respect to the Property. Therefore, the Debtor's standing is colorable, and the court will consider the merits.

## III.  PROCEDURAL HISTORY

The contest has moved from the Family Division of the Kent County Circuit Court ("State Court"), which entered a divorce decree equally dividing the equity in the Property, to this court, which granted the Debtor a chapter 7 discharge on January 22, 2009 in Case No. 08-03131. Because Mr. Beckett's claim as a former spouse depends on the State Court's Judgment of Divorce dated November 12, 2004 (the "JOD"), the Debtor's chapter 7 discharge did not affect his *in personam* rights against her. *See* 11 U.S.C. § 523(a)(15). And, given the

effect of discharges generally, the Debtor's discharge did not affect any *in rem* rights he might have against the Property. *See, generally,* 11 U.S.C. § 524; *Johnson v. Home State Bank*, 501 U.S. 78 (1991). Any rights he had against the Debtor and the Property survived the Debtor's first bankruptcy proceeding.

The parties' dispute returned to the State Court which, in response to Mr. Beckett's efforts to enforce the JOD, gave the Debtor a deadline to refinance and pay Mr. Beckett his share, in an order dated August 13, 2010.[1] Evidently unable to comply, the Debtor returned to this court on October 31, 2010, this time filing a chapter 13 petition commencing Case No. 10-13076. Mr. Beckett did not file a proof of claim in that case, and as far as the record reveals, the confirmed plan in that case did not affect his claim against the Property. Because the court withheld a chapter 13 discharge in that case under § 1328(f) given the proximity in time to the entry of the Debtor's chapter 7 discharge, Mr. Beckett's rights against the Debtor and the Property survived the Debtor's second case. The court closed that case, without a discharge, on November 18, 2011.

The record does not explain what prompted the Debtor's third bankruptcy case -- the present chapter 13 proceeding filed on August 23, 2012 -- but the court recently confirmed the Debtor's chapter 13 plan. As noted above, at the commencement of this case, Mr. Beckett's *in personam* and *in rem* rights remained intact despite the prior bankruptcies. The Debtor's recently confirmed plan provides as follows:

> Todd Beckett's claim against the Debtor will be determined by the outcome of the Adversary Proceeding, 13-80089, precipitated by the filing of the Debtor's complaint against Todd Beckett to determine validity, priority and extent of liens and request for Declaratory Judgment.

---

[1] Although the Debtor contends that the State Court "extinguished" Mr. Beckett's lien, the Debtor did not favor the court with a copy of the court's decision. *See* Plaintiff's Response to Defendant's Motion for Summary Judgment (the "Response," DN 19) at ¶ 4.

*See* First Pre Confirmation Chapter 13 Plan Amendment (Base Case DN 42).[2]

On April 11, 2013, the Debtor filed her complaint against Mr. Beckett, contending that "the Defendant has no valid lien and/or secured claim against [the Property] by virtue of the fact the Judgment of Divorce entered on November 12, 2004 was never recorded and the alleged lien was never perfected by the Defendant." *See* Adversary Complaint to Determine Validity, Priority and Extent Of Liens, and Request for Declaratory Judgment at ¶ 7 (the "Complaint," DN 1).

Mr. Beckett timely answered the Complaint, and promptly filed Defendant's Motion for Summary Disposition (the "Motion," DN 14). The Debtor opposed the Motion. The court heard oral argument on July 11, 2013 in Grand Rapids, Michigan, and took the matter under advisement.

## IV. UNDISPUTED FACTS

The parties' marriage ended on November 12, 2004 upon the State Court's entry of the JOD. The JOD embodied customary terms for child custody, parenting time, division of personal property, insurance, and similar provisions, in accordance with the former spouses' agreement. With respect to their competing rights to the Property that lies at the heart of this adversary proceeding, the parties agreed to divide their equity in accordance with the following material provision of the JOD:

> IT IS FURTHER ORDERED that the Defendant [Pamela Northedge] shall receive the marital residence and real property located at 12060 13 Mile Road, Greenville, Michigan 48838. The

---

[2] Although the court has not entered any order disallowing Mr. Beckett's "claim against the Debtor" as untimely or for any other reason, disallowance seems like a foregone conclusion under § 502(b)(9) because it appears from the matrix and various proofs of service that he may have received notice of the commencement of this case in time to file a proof of claim, but failed to file one before the deadline. As the Debtor's counsel suggested during oral argument, and Mr. Beckett's counsel all but conceded, Mr. Beckett will probably not be able to participate in any distribution under the current plan given his delay in filing the proof of claim.

> Plaintiff [Todd Beckett] shall Quit Claim Deed [sic] his interest to the real property within ten (10) days of entry of the Judgment of Divorce.  The Plaintiff [sic] shall obtain an appraisal within sixty (60) days of entry of the Judgment of Divorce through Van Stencil Appraisal's or any other appraisal agency agreed by counsel within sixty (60) days of entry of the Judgment of Divorce and shall refinance the marital residence within five (5) years.  The value of the marital residence shall be defined as the amount owing on the marital residence as of September 1, 2004, less the appraisal [sic].  Plaintiff has a right to fifty (50%) of said sum and shall retain a secured interest mortgage [sic] against said property until such time as it has been refinanced. . . .

*See* JOD at p. 10 (attached to Motion as Exh. 1).  The paragraph immediately following requires the Debtor to continue making mortgage payments, but reserves to Mr. Beckett the right to make the payments to protect his interest, and even to force a sale of the Property if she fails to do so.[3]

Ostensibly pursuant to the JOD, although certainly not within the ten days contemplated in the decree, Mr. Beckett executed a quitclaim deed on or about May 13, 2005 (the "Deed," attached to the Motion as Exh. 2).  The Deed takes the usual form for quitclaim deeds, but conspicuously includes the following language:

> This deed is given pursuant to a Judgment of Divorce between the parties . . . and is subject to a LIEN in the amount of $22,428, plus any interest which has accrued pursuant to the terms of the Judgment of Divorce.  . . .

*See* Deed at p.1 (original emphasis).  The Debtor did not execute a formal mortgage document in Mr. Beckett's favor, nor did she refinance within the time prescribed.  As noted above, Mr. Beckett sought and obtained an order from the State Court in August, 2010, which reportedly provided as follows:

> IT IS ORDERED:  The Defendant Pamela L. Beckett to refinance the marital home within 30 days.  With the Plaintiff Todd L. Beckett to receive the sum of $22,428.00 (Twenty two thousand four hundred twenty eight) plus interest.

---

[3] For convenience, the court will refer to this quoted passage from the JOD as the "Security Provision."

*See* Plaintiff's Brief in Support of Response to Defendant's Motion for Summary Disposition at p. 2 ("Debtor's Brief," DN 20).

V.  ANALYSIS

1.      Summary Judgment Standards

A court should enter summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Either party may support its factual position by "citing to particular parts of materials in the record," such as depositions, affidavits, stipulations, admissions, or other such materials.  Fed. R. Civ. P. 56(c)(1).  Here, both parties rely principally upon the JOD and the Deed.

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.  *See Hatchett v. United States*, 330 F.3d 875, 880 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A genuine issue for trial exists, and summary judgment is not appropriate, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *See Hatchett,* 330 F.3d at 880 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  If the moving party has met its summary judgment burden "by 'showing' ... that there is an absence of evidence to support the nonmoving party's case," and that the moving party is entitled to judgment under the facts, the nonmoving party can avoid summary judgment only by presenting specific evidence that raises a genuine issue for trial or by objecting to a fact that is not supported by admissible evidence.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(c)(2).  In opposing a properly supported motion, a party cannot "rest upon its ... pleadings, but rather must set forth specific facts showing that there is a genuine issue for

trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586). Successful opposition requires more than a "scintilla" of evidence, *Anderson*, 477 U.S. at 252, or simply "some metaphysical doubt as to the material facts . . . ." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

2.      The Competing Arguments

The argument set forth in Mr. Beckett's supporting brief depends almost entirely on *Farrey v. Sanderfoot*, 500 U.S. 291 (1991), a case he regards as "on all fours" with his. In *Sanderfoot*, the Supreme Court interpreted § 522(f), holding that that section did not permit a former spouse to avoid the divorce-related lien of another former spouse where "the lien is granted to the debtor's former spouse under a divorce decree that extinguishes all previous interests the parties had in the property and in no event secures more than the value of the nondebtor spouse's former interest." *Sanderfoot*, 500 U.S. at 292.

In her Response and supporting brief, the Debtor advances three alternative positions. First, in her Response, she argues that "[t]he Defendant's lien is not valid as it was not perfected and the lien was extinguished by a subsequent Order of the Kent County Circuit Court dated August 13, 2010." *See* Response at ¶ 4. This statement implies that Mr. Beckett had a lien at least at some time, but failed to perfect it and, in any event, the lien was "extinguished." In Debtor's Brief, she amplifies her non-perfection argument by contending that Mr. Beckett had to record the JOD or a separate mortgage document in order to "perfect" his interest. At oral argument, however, she seemed to suggest that a lien in favor of Mr. Beckett never arose because he never recorded a separate "mortgage," emphasizing that a "mortgage" is a term of art.

3.     <u>Court's Ruling</u>

The court's decision depends upon its construction of the JOD and the Deed. Perceiving no genuine issues of any material fact, the court will resolve the Motion as a matter of law. The court considers the three general theories of the Debtor's challenge to the lien: (a) the lien did not arise because Mr. Beckett never obtained a separate mortgage; (b) the State Court extinguished the lien in its Order dated August 13, 2010 by not mentioning it; and (c) the lien, if it exists, is avoidable under § 544.

A.     <u>Existence of a Lien</u>

Mr. Beckett's rights with respect to the Property owe their existence to the JOD, so the court must interpret that document to resolve this Motion. In Michigan, divorce judgments entered by consent between the parties are to be treated in many respects as contracts, and are construed as a matter of law unless ambiguous. *See Rose v. Rose*, 795 N.W.2d 611 (Mich. App. 2010); *see also Holmes v. Holmes*, 760 N.W.2d 300 (Mich. App. 2008); *see also Smith v. Smith*, 748 N.W.2d 258 (Mich. App. 2008). The Debtor concedes that the JOD was entered on consent, as indicated by the parties' signatures on the last page of the decree.

Whether a contract is ambiguous or not presents a question of law for the court rather than one of fact for the jury or fact-finder. *Coates v. Bastian Brothers, Inc.*, 741 N.W.2d 539, 543 (Mich. App. 2007); *see also NILAC Int'l Mktg. Grp. v. Ameritech Servs., Inc.*, 362 F.3d 354, 358 (6th Cir. 2004). Further, "if contract language is clear and unambiguous, the meaning of that language is also a question of law." *NILAC Int'l*, 362 F.3d at 358 (citing *Port Huron Ed. Ass'n v. Port Huron Area School Dist.*, 550 N.W.2d 228 (Mich. 1996)). "Only when contractual language is ambiguous does its meaning become a question of fact." *Coates,* 741 N.W.2d at 543 (citing *Port Huron*, 550 N.W.2d at 237)). Moreover, the existence of an ambiguous term within

an agreement does not necessarily render the entire agreement ambiguous if reference to other language within the document resolves the ambiguity.  *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 780-81 (Mich. 2003).  As applied here, the question is whether the JOD's Security Provision is ambiguous because it uses the term "secured interest mortgage."

The JOD's Security Provision may be imprecise or inarticulate in some respects but, when read in context, it is not ambiguous regarding the division of the Property and the intention to secure that division.  The JOD plainly expressed the parties' intention to divide the value of the Property equally, to permit the Debtor to continue living there, and to allow her to take up to five years to pay her estranged husband his 50% share at a price established by a prescribed formula.  It included negotiated provisions for interest rate and payment of interest.  To secure these obligations, the JOD included the Security Provision, which permitted Mr. Beckett to "retain" a "secured interest mortgage."  To provide additional protection to him, the JOD provided that he "further reserves the right to have the marital home sold in the event that the Defendant cannot maintain the house payments current."  This property division was clearly within the State Court's province, especially given the Debtor's concession at oral argument that she agreed to the terms of the JOD by subscribing to it.  *See* M.C.L. § 552.19 (Restoration of real and personal estate to parties); JOD at p. 12 (signature of parties).  The Debtor's suggestion that Mr. Beckett has no interest in the Property because he never obtained a separate note and "mortgage" is not persuasive, given the other terms of the JOD's Security Provision.

There is no reference to any requirement for a note within the JOD, and in fact, the JOD itself imposes the payment obligation, interest terms, and power of sale.  Given these terms, it is unreasonable to construe the JOD as requiring a separate mortgage.  Moreover, if the parties had contemplated a formal note and mortgage from the Debtor to Mr. Beckett, the JOD would have

expressly provided for that in the same way that it obligated Mr. Beckett to document the quitclaim conveyance.  It did not require a separate instrument of conveyance.

With respect to Mr. Beckett's rights, the JOD twice employs the concept of retention (Mr. Beckett "shall retain a secured interest mortgage" and he "reserves" the right to force a sale if the Debtor defaults on the home loan).  Although these concepts at first blush seem not to fit comfortably into the JOD beside a companion provision requiring Mr. Beckett to "quitclaim" his interest, they are not inconsistent with Michigan real estate law:  even in the context of a quitclaim deed, a grantor may reserve an interest, provided the interest is "expressly excepted or reserved."  *Thomas v. Steuernol*, 460 N.W.2d 577, 581 (Mich. App. 1990) (citing *Ziegler v. Simmons*, 91 N.W.2d 819 (Mich. 1958)).  When a grantor reserves an interest in a deed instead of excepting the interest, Michigan indulges a legal fiction that the grantor conveys the estate to the grantee who is deemed to have conveyed the reserved interest back to the grantor. 1 Cameron, Michigan Real Property Law (3d ed.), § 10.11, p. 351; *see also Stevens Mineral Co. v. State*, 418 N.W.2d 130, 133 (Mich. App. 1987).  To this extent, the reservation of the lien in the Deed may be regarded as a conveyance back to Mr. Beckett, much as an ordinary mortgage from mortgagor to mortgagee.  In view of these authorities, perhaps it may be said that Mr. Beckett *retained* a "secured interest *mortgage*."

Although the Sixth Circuit noted Michigan's rule that whether a contract is ambiguous presents a question of law, the court also noted that a trial court could consider extrinsic evidence to "disclose ambiguity. . . ."  *NILAC Int'l Marketing,* 362 F.3d at 359.  In response to the Motion, however, the Debtor has offered no such evidence, for example, an affidavit averring that the parties discussed or intended execution of a separate mortgage document when negotiating the terms of the JOD.  The court finds that the JOD unambiguously provides for Mr. Beckett's

interests in the Property to secure the Debtor's obligations -- in bankruptcy parlance, a "lien" or, given the parties' agreement, a "security interest." *See* 11 U.S.C. § 101(37) (defining "lien") and (51)(defining "security interest" as lien created by agreement).

Clearly acting pursuant to the JOD, though obviously beyond the ten-day period, Mr. Beckett delivered (and the Debtor recorded) the quitclaim Deed. The fact that the JOD refers to a "Quit Claim Deed" -- which ordinarily transfers all of the grantor's rights -- and that Mr. Beckett signed and delivered such a deed, does not defeat his security interest because he expressly preserved it by making the conveyance "subject to a LIEN" as expressly set forth in the Deed. Although Michigan courts construe deeds strictly against the grantor "so as to give the grantee the greatest estate that the deed's terms will permit," and although any reservation or exception by the grantor must be "narrowly construed," the Deed in this case quite clearly makes the conveyance subject to the "LIEN" or "security interest" contemplated in the JOD. Unlike the general reference to "security purposes" mentioned in the quitclaim deed at issue in *Eastbrook Homes, Inc. v. Treasury Dept.*, 820 N.W.2d 242, 250 (Mich. App. 2012), Mr. Beckett's quitclaim Deed is quite specific with respect to the amount of the security and the source of it. Even giving the Deed a strict construction, there is no genuine issue as to the fact that the Deed reserved the lien in accordance with the JOD.

Fairly construed, and drawing reasonable inferences against Mr. Beckett, the court concludes that the JOD permitted him to retain an interest in the Property as security for his 50% share of the equity, and that the Deed, though denominated as a quitclaim deed, sufficiently reserved that interest.

B.      Extinguishment of the Lien

The court rejects the Debtor's argument that the State Court's Order dated August 13, 2010 somehow extinguished Mr. Beckett's lien by modifying the JOD.  First, the quoted passage of the Order dated August 13, 2010[4] post-dated the delivery and recording of the Deed.  If the Order had intended to affect that conveyance, it would have said so directly.  The court will not suppose that the State Court forfeited Mr. Beckett's property rights impliedly, and certainly will not do so based on an Order that the Debtor included within the summary judgment record.  Moreover, although the court must draw inferences in favor of the non-movant under Fed. R. Civ. P. 56 and related authorities, it need not draw unreasonable inferences.  Here, it is unreasonable to infer that the State Court's Order directing the Debtor to refinance within thirty-days and remit the same dollar amount set forth in the Deed undermines the Deed or the reserved lien in any respect.

Mr. Beckett's interests in the Property were not extinguished, and remained intact when the Debtor filed her most recent bankruptcy petition.

C.      Perfection and Strong-Arm Issues

Although the court acknowledges that the Debtor may have standing to raise perfection issues under § 544 notwithstanding the usual rule that transfers are effective as between the parties to the transfer without regard to perfection, the court concludes on the merits, that the bankruptcy trustee's strong-arm powers are not available to the Debtor in this case.

First, to the extent the Debtor invokes § 544 in connection with her exemption rights under § 522(f), Mr. Beckett's citation to *Sanderfoot* defeats the argument.

---

[4] The only order of the State Court included in the record is the JOD, so it is impossible for the court to consider the Order dated August 13, 2010 in its entirety, even assuming that the quoted passage is accurate.  *See* Fed. R. Civ. P. 56(c)(3).

Second, to the extent the Debtor intends to rely on § 522(h), her reliance is misplaced. Mr. Beckett either retained an interest in the Property under the JOD (in which case, there is no transfer to avoid as unperfected), or he obtained a new interest by way of an implied transfer from the Debtor pursuant to the JOD, which the Debtor admits was effectively a consent judgment. In other words, the transfer of the lien was voluntary, and therefore, outside the scope of § 522(h).[5]

Third, to the extent the Debtor asserts the trustee's avoidance powers derivatively under cases such as *Barbee*, the undisputed fact that the Deed was recorded and that it clearly put the world on notice of Mr. Beckett's lien defeats a trustee's status as hypothetical lien creditor or *bona fide* purchaser of real property. Given that any purchaser would learn of Mr. Beckett's interest in the Property either under the original deed while the parties were married, or the quitclaim Deed from Mr. Beckett to the Debtor, it is of no moment that he did not record the JOD, though Michigan law certainly would have permitted him to do so. *See* M.C.L. § 600.2935 (permitting, though not requiring, the recording of judgments affecting title to land).

The Debtor's reliance on Michigan Land Title Standard 16.3 (Sixth Ed.) does not help her cause. In fact, it confirms just the opposite -- that the reference to an unrecorded mortgage in a recorded deed may not be disregarded. As the court understands the Debtor's argument, the JOD referenced in the recorded quitclaim Deed is, by analogy, the equivalent of an unrecorded mortgage. The title standard, however, clearly indicates that the JOD may not be disregarded under Michigan real estate law. By clouding the title and putting prospective purchasers on notice of the lien, the reference to the JOD in the Deed defeats the judgment lien creditor or *bona*

---

[5] Section 522(h) is only available if the Debtor could exempt the recovered property under § 522(g), but § 522(g) is limited to involuntary transfers. *See* 11 U.S.C. § 522(g) and (h). *In re Dickson*, 655 F.3d 525 (6th Cir. 2011) (specifying five requirements for avoidance under § 522(h)).

*fide* purchaser status of a trustee under § 544(a). The same disability would apply to the Debtor to the extent she would be permitted to exercise the trustee's strong arm powers derivatively.

The court concludes, as a matter of law, that the Debtor cannot avoid Mr. Beckett's interests as unperfected under § 544, neither directly (with respect to exemptions under *Dickson*) nor derivatively (under *Barbee*).

## VI.  CONCLUSION AND ORDER

Strictly speaking, the timeliness of Mr. Beckett's claim is not at issue in this adversary proceeding, only the existence and perfection of any lien against the Property securing that claim.

Although it seems likely based on the court's review of the base case docket and claims register that Mr. Beckett's claim is untimely and therefore subject to disallowance under § 502(b)(9), there is no genuine issue as to any material fact regarding his lien. Accordingly, assuming disallowance,[6] the court will not permit Mr. Beckett to participate in any distribution under the Debtor's plan as recently confirmed, but his rights against the Property have survived confirmation and will survive this bankruptcy case. Accordingly, the court will enter a separate judgment dismissing the Debtor's complaint with prejudice.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion (DN 14) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment for the Defendant in accordance with this Opinion and Order.

---

[6] No interested party has formally objected to Mr. Beckett's claim, and the court has not entered any order disallowing that claim. If, as the court predicts, the claim must be disallowed as untimely, the court encourages counsel to stipulate. Until the claim is formally disallowed, it will stand. Any objection to the claim, if filed, will be resolved in a separate contested matter.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order, and the judgment to be entered, upon John W. Raven, Esq., Christian G. Krupp, II, Esq., Pamela L. Northedge, Todd Beckett, Brett Rodgers, Esq., and the United States Trustee, pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4.

END OF ORDER

**IT IS SO ORDERED.**

**Dated July 23, 2013**



Scott W. Dales
United States Bankruptcy Judge